# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| **JOHN A. DEEP,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | CIVIL NO. 05-118-P-H |
| | ) | |
| **RECORDING INDUSTRY** | ) | |
| **ASSOCIATION OF AMERICA,** | ) | |
| ET AL., | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

## ORDER ON PLAINTIFF'S MOTION TO NAME ADDITIONAL DEFENDANTS

The plaintiff's motion for leave to name additional defendants is **DENIED**. The MDL panel transferred this case here in June, 2005, because of its potential connection to the multidistrict music CD litigation that was managed and settled in this Court. In July, 2005, the MDL panel also transferred a related case filed by Deep, Civil No. 05-cv-149.[1] After I ruled on the *pro se*

---

[1] It is difficult to discern what the plaintiff has in mind for the second case:

> The Motion, attached hereto as Exhibit A, applies to the above captioned matter to the extent it seeks to amend, with minor conforming changes as described therein, the Second Amended Complaint filed in Case No. 2:05-CV-118. That complaint in turn is incorporated by reference in the First Amended Complaint filed in the above-captioned matter, in an effort to coordinate the two proceedings in a unified fashion.
>
> For clarity, in the interest of judicial economy, I do not request expedited relief for the issuance of summonses for the additional defendants in the above-captioned matter, but I reserve my right to name additional defendants in any subsequent proceedings.

Corrected Notice of Recent Mot. in Case No. 2:05-cv-118 at 1 (05cv149 Docket Item 36).

plaintiff's motion for an order to show cause, the Magistrate Judge held a conference of counsel on September 7, 2005, and then issued a report and scheduling order giving the plaintiff until September 28, 2005, to amend his complaints and add parties.  Thereafter, on September 28, 2005, the plaintiff filed amended complaints (docketed on September 29, 2005), adding claims against his previous lawyers.  All the defendants filed various motions to dismiss both complaints, and the issues have been fully briefed and are awaiting decision, a matter on which I have been working for some time.  Now on June 19, 2006, the plaintiff wants to add still four new parties in what he calls his Third Amended Complaint.  The new parties would be: Robert Higgins, William Duker, Amici LLC, and Datamine LLC.  He calls them collectively "the Amici Defendants."  He states:

> The Third Amended Complaint neither adds nor modifies any causes of action, and makes only conforming changes to the captioned defendants, the parties (inserting additional defendants at ¶¶ 64-67) and the relief requested (inserting a Prayer for Relief for constructive trust on the funds received by the Amici Defendants for the pending sale of Amici, ¶ j).

Mot. for Leave to File Third Am. Compl. at 1 (Docket Item 74).  If the plaintiff had a cause or causes of action against the four proposed new defendants, he should have included them as parties in his September 29, 2005 amended complaints.  The plaintiff does not suggest that he has only recently come across evidence that would newly support a cause of action against them.  Instead, what provokes his latest strategy is a news release that Xerox Corp. is paying $174 million to buy Amici LLC.  Id., Ex. B.  The plaintiff wants access to

this money.  He maintains that certain of his assets "found their way into my lawyers' hands, including shares and intellectual property held in or by Amici LLC." Id. at 2.  He also says that his lawyers or their families own a 50% share of Datamine, which in turn owns a 51% share of Amici, and that he "personally developed" Amici's "system of document management." Id.  He also says that his previous lawyers have "transferred their interest in Amici," and that as a result "William Duker now stands to receive more than $88 million in cash." Id.  His goal in adding the four defendants is to move immediately for a temporary restraining order and preliminary injunction against them to "seek to hold in constructive trust certain assets of my lawyers and the Amici Defendants." Id. at 3.

    I deal with the motion as the plaintiff frames it:  to add defendants.  I **DENY** it because the plaintiff has shown no basis for claims against the four that he did not have when filed his last amended complaint.  This is piecemeal litigation at its worst.  The plaintiff's two lawsuits were transferred here because of their alleged connection to antitrust litigation against music CD manufacturers and distributors for their retail pricing strategies.  One asserted federal antitrust, RICO, and bankruptcy claims, as well as several state-law claims, against the record and music company defendants.  The other asserted different, solely state-law claims against the same defendants such as breach of contract, tortious interference with business relations, breach (and aiding and abetting breach) of fiduciary duty, and negligence, among others.  In both cases, he has already amended each complaint to add new defendants, his

former lawyers. To add new defendants now would start a whole new round of motions to dismiss and associated briefing and delay these cases once more, unnecessarily. My ruling does not determine what relief, if any, the plaintiff may obtain against existing defendants.[2]

**SO ORDERED.**

**DATED THIS 21ST DAY OF JUNE, 2006**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[2] I observe in passing that the plaintiff says that his previous lawyers (already defendants) earlier transferred their interest in Amici. Adding "the Amici defendants," therefore, would not assist in recovery against the lawyers' assets. The plaintiff has not even revealed the nature of the Xerox/Amici transaction that will yield the cash he wants to freeze. If the transaction is an asset purchase, then Xerox would be purchasing assets from Amici, and the cash would go to Amici directly. If it is a sale of stock by Amici to Xerox, the Xerox money would go to the Amici stockholders, not the corporation itself. The plaintiff implies that Duker is a major such stockholder, but nowhere does he actually say that directly (beyond asserting that his lawyers and Duker have a "51% controlling interest in Amici, as owners of Datamine," id. at 7). He does say that Datamine LLC owns a 50% share of Amici. Thus, if the transaction is a stock sale, Datamine would receive a share of the cash as a stockholder. The plaintiff also says that he was forced to give a 15% option to Datamine concerning his own asset in "Aimster" but he never reveals whether Datamine ever exercised the option. See id. at 8; Second Am. Compl. at 1 (Docket Item 34). Alternatively, the Xerox/Amici transaction may be some form of merger. The motion and its attachments shed no light.