# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

|  |  |
|---|---|
| **IN RE COMPACT DISC MINIMUM ADVERTISED PRICE ANTITRUST LITIGATION** ] ] ] ] ] | **MDL DOCKET NO. 1361** *(This Document Applies to John A. Deep v. Recording Industry Ass'n of of America, Inc., et al., Nos. 2:05cv118 and 2:05cv149)* |

## ORDER ON PENDING MOTIONS

### I. INTRODUCTION

The Multidistrict Litigation Panel transferred these two lawsuits here because of the pendency of MDL No. 1361 (In re Compact Disc Litigation).   All defendants have moved to dismiss both complaints.

I **GRANT** the motions to dismiss all the federal claims for failure to state a claim upon which relief can be granted (05-cv-118, Counts I-III, V-VII).[1]   That dismissal is with prejudice.   I **GRANT** the Lawyer defendants' motion to dismiss all the remaining claims against them on grounds of abstention.   That dismissal is without prejudice, and applies to all remaining counts in both lawsuits.   I **GRANT** the other defendants' motions to dismiss all the state law claims against them on the merits and with prejudice in both lawsuits except as to two counts against Trans World, Count XI in 05-cv-118, and Count V in 05-cv-149 (Aiding and Abetting Breach of Fiduciary Duty).   There, the dismissal is on grounds of abstention and without prejudice.   At the end of this opinion, I also resolve a handful of related motions.

---

[1] Each claim is styled:   "First Cause of Action," "Second Cause of Action," etc.   I find it easier to refer to the claims as "Count I," "Count II," etc.

## II. PROCEDURAL BACKGROUND

The plaintiff, John Deep, is proceeding in this court without a lawyer.  He filed the first of these two lawsuits, 05-cv-118, as an adversary proceeding in Bankruptcy Court for the Northern District of New York in 2004.  Compl., In re Deep, Adv. Proc. No. 04-90037 (Bankr. N.D.N.Y Feb. 11, 2004).  District Judge Kahn withdrew the bankruptcy reference, Deep v. Recording Indus. Ass'n of America, No. 04-mc-055 (N.D.N.Y. Feb. 7, 2005).  Deep then amended his complaint.  The MDL Panel transferred the lawsuit here on June 21, 2005. Deep v. Recording Indus. Ass'n of America, No. 05-cv-205 (N.D.N.Y. Jun. 21, 2005).  Deep then amended his complaint once again, adding new parties. Second Am. Compl., No. 05-cv-118 (Docket Item 34).

Deep filed the second lawsuit, 05-cv-149, as a complaint in New York State Court, Albany County, in 2005.  Compl., Deep v. Record Indus. Ass'n of America, No. 50-05 (N.Y. Sup. Ct. May 4, 2005).  He later removed it to the Northern District of New York under 28 U.S.C. § 1452 (removal of state court actions arising in or related to bankruptcy proceedings).  Notice of Removal, Deep v. Recording Indus. Ass'n of America, No. 05-cv-693 (N.D.N.Y. Jun. 3, 2005).  The MDL Panel transferred it here on August 1, 2005. Deep v. Recording Indus. Ass'n of America, No. 05-cv-693 (N.D.N.Y. Aug. 1, 2005) (order transferring case).  Deep then amended the complaint in this court, adding new parties.  First Am. Compl., No. 05-cv-149 (Docket Item 8).

The complaint in the first lawsuit is now 128 pages and 551 paragraphs long.  In it, Deep has named over 30 different defendants.  Second Am. Compl. The second lawsuit asserts the same state law claims as the first lawsuit, but

no federal claims.  First Am. Compl.  Both complaints name as defendants a lawyer and two law firms: David Boies, Esq.; Boies, Schiller & Flexner, LLP; and Straus & Boies, LLP ("the Lawyers"); Trans World Entertainment Corp. ("Trans World"); and numerous entertainment entities including record companies, motion picture studios, and the Recording Industry Association of America ("RIAA") (collectively "the Record and Movie Companies").[2]  Because the factual allegations and claims in the second lawsuit mirror those of the first lawsuit (except for omitting the federal claims), I shall refer primarily to the first lawsuit 05-cv-118, and its Second Amended Complaint.[3]

In his Second Amended Complaint, Deep covers a number of newsworthy topics of the past few years, including Attorney David Boies's representation of Vice President Al Gore in Bush v. Gore, Compl. ¶ 2; the Napster litigation, id.; investigations of Tyco, Adelphia and accounting firm Deloitte & Touche, id. ¶¶ 19, 26; kickbacks and payola in the music industry extending to "a major chain of radio stations," Clear Channel, id. ¶ 112; investigations by New York Attorney General Elliot Spitzer, id. ¶¶ 113-14; congressional testimony of singer Sheryl Crow before the late Congressman Sonny Bono, id. ¶ 135; bootlegging of CDs and DVDs, id. ¶¶ 107-09; proper accounting rules for the recording industry, id. ¶¶ 121-31; and the controversy over an arrangement by which Attorney David Boies and his related law firms allegedly steered client

---

[2] The complaints differ slightly in which record companies and motion picture studios are named as defendants.  These differences do not affect the analysis.

[3] I cite factual allegations in the form of "Compl. ¶ ___," referring to the Second Amended Complaint in 05-cv-118.  I mean thereby to refer to the corresponding factual allegation (numbered differently) in the First Amended Complaint (05-cv-149) as well.

business to a litigation support company, Amici LLC, without disclosing his or his family's ownership of Amici, id. ¶¶ 11-20.

Deep describes an alleged conspiracy by which "Labels and Studios"[4] schemed to inflate their revenue and profits by paying kickbacks to Trans World, a distributor.  The conspiracy allegedly involved bribes, slush funds, fraudulent accounting practices, bid-rigging, kickbacks, and other devices, id. ¶¶ 93-96 *ff.*; phantom credits and other practices by which the "Labels and Studios" defrauded artists of their rightful royalties, id. ¶¶ 132-40; and a variety of other apparently sordid dealings (for example, "a massive fraud in which consumers, investors and artists are deceived," id. ¶ 104).

Deep claims the following relationship to the events he describes.  He says that he invented a method of determining the price a consumer is willing to pay for an item online, a method that Deep says can be used successfully for "targeted marketing of discounted prices," id. ¶ 31; in another part of the complaint, the invention becomes one for downloading video-on-demand, id. ¶ 396; and he also refers to it as "sharing with buddies," id. ¶ 78.  At the time, Deep called his invention Aimster.[5]   Deep shopped the invention to Trans

---

[4] By this term, Deep says that he means "major labels, studios and distributors," Compl. ¶ Intro., referring to businesses that produce prerecorded music or movies and distribute them, id. ¶¶ 314-15.

[5] This is a narrower description than Judge Aspen provided in 2002:

> Aimster is a file sharing service that allows its members to identify large numbers of similarly situated users with whom they can transfer files in encrypted form and send instant messages. Aimster is the brain child of Defendant John A. Deep, who also founded Defendant BuddyUSA, Inc. . . . to develop the software and Defendant AbovePeer, Inc. . . . to operate the system . . . .

In re Aimster Copyright Litig., 252 F. Supp.2d 634, 638 (N.D. Ill. 2002).

> According to Deep, Aimster performs two fundamental functions. First, it allows its users to send messages or transfer files to other

*(continued next page)*

World and in September 2000 obtained a meeting with Trans World.  Attending were Trans World CEO Robert Higgins, Trans World CFO John Sullivan, and Boies-Schiller lawyer Michael Endler.   Id. ¶ 78. During the meeting, Higgins introduced Deep to a person named Bill Duker.   Id. ¶ 79.[6]  After the meeting, "in a private discussion," Higgins told Deep that he would ask Bill Duker to represent Higgins in purchasing an interest in Deep's invention.   Id. ¶ 80. Duker and Deep met later accordingly, and discussed how Deep's invention could be used and the structure for benefiting Higgins.[7]  "Bill Duker then advised [Deep] that [Deep] engage Boies-Schiller as [Deep's] lawyers."  Id. ¶ 88. Duker agreed to contact attorney David Boies on Deep's behalf.   Id.  "[A]s a result of Bill Duker's promise to [Deep] in September 2000 . . . David Boies sent his letter to [Deep] dated November 15, 2000," thereby allegedly agreeing to represent Deep.  Id. ¶ 89.  Deep now claims that David Boies and related law firms had an undisclosed conflict of interest because they were representing Trans World at the same time in the In re Compact Disc Litigation in this court. Compl. ¶ 163.

_____

> users by facilitating the creation of direct user-to-user (or peer-to-peer) networks.  Through the use of encryption technology contained within the Aimster software, the individual users are assured of complete privacy in their online transaction. . . . Aimster's second fundamental function, according to Deep, is to allow users to identify other "buddies" who have similar interests and who may wish to correspond and exchange files.

Id. at 641 (citations omitted).  Judge Aspen preliminarily enjoined the use of Aimster because of copyright infringement.  The Seventh Circuit affirmed.  In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003).

[6] Deep alleges that Bill Duker is a disbarred lawyer and convicted felon, Compl. ¶ 152, and was also involved with Amici LLC and other Boies-Schiller related ventures, id. ¶ 247.

[7] Here, Deep seems to be accusing Higgins of taking a corporate opportunity that appropriately belonged to Trans World.  But sometimes Deep refers to the arrangements as benefiting Trans World.

According to Deep, that undisclosed conflict infected all that followed, including how Deep paid Boies (allegedly in part through an ownership option in Aimster that ended up in a company controlled by Boies's family[8]); the structuring of Deep's deal with Trans World; concealed payments by Boies to Duker, who then allegedly used the money to buy Deep's assets on behalf of Trans World and the Labels and Studios, Compl. ¶ 3, or according to later allegations, on behalf of all these entities and Boies as well, id. ¶¶ 5, 10; the use of these and other payments in creating Amici, id. ¶ 11, which Boies or Boies's family allegedly controlled; Amici's unauthorized use of Deep's Aimster technology to conduct Amici's business of litigation support services, id. ¶¶ 12-13 (which, without the benefit of Deep's involvement, was defective, id. ¶ 19); all resulting in a conspiracy "to manipulate the market for digital music and movies by fraudulently financing and controlling [Deep's] business using undisclosed kickbacks and earn outs," id. ¶ 22.  The scheme or conspiracy allegedly continued into Deep's bankruptcy proceedings.  Id. ¶ 23.  According to Deep, the named lawyers/law firms conspired with other lawyers and with one of Deep's accountants, as a result of which these others received excessive and undisclosed compensation, id. ¶ 24; and they concealed litigation from Deep (here Deep refers to the notorious Tyco and Adelphia disputes, matters of national media interest), and in particular the settlement of In re Compact Disc Litigation in this District, id. ¶ 26.

---

[8] The assertion is confusing because Deep describes Aimster as an unincorporated joint venture between him and Trans World, but de scribes Boies's ownership as a 15% option that was exercised.  From other allegations I am aware that Deep has other companies and does not always distinguish between his and his corporations' ownership interests.  The stock ownership alleged here is proba bly in BuddyUSA, Inc.  See Compl. ¶ 153 ff.

Deep claims to have lost and seeks to recover over $1 billion because of the settlement of the In re Compact Disc Litigation in this District; over $10 million in an undescribed controversy with AOL,[9] over $1.02 billion in the In re Aimster Copyright Litigation in the Northern District of Illinois;[10] $10 million paid by Tyco and Adelphia to Amici; $40 million paid by other Boies-Schiller clients to Amici; and unknown other amounts.  Id. ¶ 30.

The nub of Deep's allegations appears to be his claim that his invention, Aimster, was worth a lot of money; but that the Lawyers, Trans World, Duker, and the "Labels and Studios" all stole it from him or prevented its success (for varying reasons), and were wrongly enriched at his expense.  He makes claims of fraud on this court in the In re Compact Disc Litigation settlement and on other courts in other cases; claims under federal antitrust laws, Sarbanes-Oxley, federal RICO, and federal bankruptcy law (automatic stay and fraudulent transfer); claims under New York antitrust and consumer protection law and New York common law involving breach of fiduciary duty, aiding and abetting the fiduciary breach, breach of contract, negligence, conspiracy, tortious interference with business relations, piercing the corporate veil, declaratory and injunctive relief, and constructive trust for unjust enrichment.[11]

---

[9] According to the Lawyers' response, it was a trademark dispute (allegedly the first three letters of "Aimster" stand for AOL Instant Messaging), and ultimately resulted in a name change to Madster.  Lawyers Mot. to Dismiss Compl. with Incorporated Mem. of Law ("Lawyers Mem.") at 5 (Docket Item 56).

[10] This is the litigation mentioned in note 5, supra.

[11] The federal claims are: fraud on the court (Count I); antitrust violations (Counts II-III); bankruptcy violations (Count V); Racketeering Influenced and Corrupt Organizations Act (RICO) violations (Count VI); and  Sarbanes-Oxley Act violations (Count VII).  The New York *(continued next page)*

### III. WHETHER DEEP'S CLAIMS ARE BARRED OR RELEASED
### BY THE SETTLEMENT IN MDL 1361

The Record and Movie Companies argue that Deep's complaints should be dismissed in their entirety because all his claims are released and barred under the settlement order entered in In re Compact Disc Litigation. Record & Movie Cos. Mot. to Dismiss Second Am. Compl. & Incorporated Mem. of Law ("Record & Movie Cos. Mem.") at 32-36 (Docket Item 44). Trans World adopts their arguments. Trans World Mot. to Dismiss & Incorporated Mem. of Law (Trans World Mem.) at 28 (Docket Item 42). It is well-established that "[i]n an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). Nevertheless, I conclude that the defendants' argument fails; Deep's claims are not barred or released.

The In re Compact Disc Litigation court-approved settlement resolved consumer claims related to allegedly higher prices paid for compact discs at retail during the period 1995-2000. See In re Compact Disc Litig., MDL. No. 1361, 2003 WL 21685581, *9 (D. Me. Jul. 18, 2003). The plaintiff class there asserted that the higher prices were due to an antitrust conspiracy (music manufacturers, distributors, and retailers) to stabilize minimum advertised prices. By contrast, none of Deep's claims, antitrust or otherwise, involves a consumer injury at all. Instead, his antitrust theories are based on his being a

---

claims are: deceptive acts and practices and state antitrust violations (Count IV); breach of fiduciary duty (Count VIII); breach of contract (Count IX); negligence (Count X); aiding and abetting breach of fiduciary duty (Count XI); conspiracy (Count XII); tortious inference with contract (Count XIII); piercing the corporate veil (Count XIV); declaratory and injunctive relief (Count XV); and constructive trust for unjust enrichment (Count XVI).

market participant or competitor, not a consumer; the rest of his claims are premised on an entirely different set of facts involving other court proceedings in which he has been involved, alleged misconduct by the Lawyers, or a business relationship that he had with Trans World.   Because his claims are not those asserted or resolved in In re Compact Disc Litigation, they are not barred or released by that case's Final Judgment and Order.

## IV.  RULE 12(B)(6) ANALYSIS

In deciding the motions to dismiss, I "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff[]." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  I construe Deep's complaint liberally, considering the fact that he is proceeding without a lawyer, Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), and I will dismiss only if "it appears to a certainty" that Deep cannot "recover under any set of facts" consistent with the allegations set forth in his two complaints.  Me. Coast Mem'l Hosp. v. Sargent, 369 F. Supp.2d 61, 63 (D. Me. 2005) (quoting State St. Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 87 (1st Cir. 2001)).  I apply New York law to the state claims; all parties assume that it applies and none contests that assumption.

### A.    Fraud on the Court

Deep asserts fraud on the court as Count I of both lawsuits.  The Second Amended Complaint bases this claim upon his allegation that the Lawyers represented Trans World in the In re Compact Disc Litigation without his knowledge at the same time that they were representing Deep elsewhere,

Compl. ¶ 299; Deep's assertion that the Lawyers knew that the representations were adverse, id. ¶ 300; the Lawyers' letter to this court in July 2005 denying any impropriety, id. ¶¶ 301-02; the absence of any waiver by Deep, id. ¶ 303; and his assertion that the Lawyers "deliberately concealed from this Court" the relationship Deep had with Trans World, id. ¶ 305, and failed to provide discovery.[12]  Deep says that there was "related fraud perpetrated" upon the Northern District of Illinois in In re Aimster Copyright Litigation, id. ¶ 309, and upon the Eastern District of Virginia in AOL v. John Deep, id. ¶ 310.  Under Fed. R. Civ. P. 60(b), Deep asks to have the judgment vacated in this and other courts.  He apparently also seeks damages for "fraud upon the court."  Pl.'s Opp'n to Mot. to Dismiss ("Opp'n") at 1-4 (Docket Item 57).

In seeking to dismiss this count, the Lawyers argue that Deep has failed to state a cause of action or even allege damages, focusing their attention on the July 2005 letter.  Lawyers Mem. at 18.  Deep responds that the July 2005 letter was only the "begin[ning] . . . assertion," and adds allegations from other Counts.  Opp'n at 11-12.  Although he does not develop it in his opposition, Deep's Second Amended Complaint does have a lengthy section devoted to his factual allegations of fraud on the court.  Compl. ¶¶ 172-228.

Fraud on the court occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter . . . ."  Aoude v. Mobil Oil Corp., 892

---

[12] This assertion is in ¶ 372, part of Deep's anti-trust claim.  But in his opposition to the motion, he characterizes it as part of the fraud claim.  Pl. Opp'n to Mot. to Dismiss ("Opp'n") at 12 (Docket Item 57).

F.2d 1115, 1118 (1st Cir. 1989); <u>Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.</u>, 71 F.3d 44, 48 n.5 (1st Cir. 1995). It requires "the most egregious conduct involving a corruption of the judicial process itself." <u>Roger Edwards, LLC v. Fiddes & Son Ltd.</u>, 427 F.3d 129, 133 (1st Cir. 2005) (quoting 11 Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 2870 (2d ed. 1995)). The courts' power to deal with such fraud is inherent and rooted in equity, for courts "cannot lack the power to defend their integrity against unscrupulous marauders . . . ." <u>Aoude</u>, 892 F.2d at 1119.[13]

### (1)    *The Lawyers*

#### (a)    *MDL 1361 <u>In re Compact Disc Litigation</u>, District of Maine, 2001—present*

Deep's primary claim of fraud on the court deals with the <u>In re Compact Disc Litigation</u> in this court. Deep claims that his Lawyers' undisclosed conflict of interest worked a fraud upon this court and caused him financial harm. Compl. ¶¶ 304-11. Deep states that the Lawyers did not disclose their simultaneous representation to him or the court, and that this nondisclosure caused him financial harm because he was made a party to the <u>In re Compact</u>

---

[13] The few authorities to address the issue are split on whether a plaintiff can bring an independent *damages* action for fraud on the court. <u>Compare</u> <u>In re R&R Assoc. of Hampton</u>, 248 B.R. 1, 6 (Bankr. D.N.H. 2000) ("[M]ost courts have ruled that jurisdiction is limited to granting relief from the judgment or order."); <u>Chewning v. Ford Motor Co.</u>, 35 F. Supp.2d 487, 491 (D.S.C. 1998) ("[No authority] suggest[s] the existence of an independent action for damages."); <u>Andersen v. Roszkowski</u>, 681 F. Supp. 1284, 1292 (N.D. Ill. 1988) ("[T]his Court does not have subject-matter jurisdiction to award money damages for fraud on the court."), <u>aff'd</u> 894 F.2d 1338 (7th Cir. 1990) (unpublished order) <u>with</u> <u>In re Tudor Assoc., Ltd., II</u>, 1990 WL 546146, *7 (E.D.N.C. Apr. 30, 1990) (affirming bankruptcy court's decision to impose equitable lien on creditor's claim and award damages, after creditor committed fraud on court in underlying bankruptcy petition); <u>Robinson v. Volkswagenwerk AG</u>, 56 F.3d 1268, 1273, 1274 n.6 (10th Cir. 1995) (stating that party can "obtain relief from a fraudulently obtained judgment" by filing "an independent action for damages," but also affirming district court's conclusion that "plaintiffs could not pursue their claims for damages without first obtaining relief from the judgment"). Because I conclude that Deep has not shown a fraud on the court, I do not address the availability of damages.

Disc Litigation settlement (by dint of his relationship with Trans World) and yet was excluded from sharing in the settlement proceeds.   Id. ¶ 308.[14]   He requests as relief "all damages proximately caused by the fraud upon the court."   Id. ¶ 311.

I have already explained that Deep's claims are not those of the consumer class in In re Compact Disc Litigation.   He has no standing to open the judgment or to challenge the adequacy of discovery in that lawsuit. Moreover, Deep's allegations do not demonstrate a fraud on this court.   An undisclosed conflict of interest may be grounds for a malpractice lawsuit against the Lawyers, but alone it does not meet the Aoude or Roger Edwards standard for vacating a judgment. Cf. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 264 (1944) (fraud on the court "involves far more than an injury to a single litigant"); Wright, et al., supra, § 2870 ("Nondisclosure by a party or the party's attorney has not been enough [to find fraud on the court]."); United States v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002) ("[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court.   Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to

---

[14] Trans World was a defendant in the In re Compact Disc Litigation.   It did not share in the settlement proceeds, but contributed to them.   In re Compact Disc Litig., MDL No. 1361, 2003 WL 21685581, *2 (D. Me. Jul. 18, 2003).

the matter before it, will not ordinarily rise to the level of fraud on the court.") (quoting Weese v. Schukman, 98 F.3d 542, 552-53 (10th Cir. 1996).[15]

In his opposition to the motion to dismiss, Deep refers only in passing to his claim that this court has jurisdiction to, and should, examine and set aside the judgments of other courts for fraud. Opp'n at 16. Nevertheless, I examine each of his other claims.

### (b)    In the Northern District of New York, April, 2001

Deep alleges that his former lawyers also committed a fraud on the court in the Northern District of New York in April, 2001. The Lawyers allegedly represented Deep there.[16] Compl. ¶¶ 172-75. The alleged fraud on that court occurred, Deep contends, when the Lawyers did not tell him that they were simultaneously representing Trans World in In re Compact Disc Litigation. Id. ¶ 177. Deep does *not* allege that the Lawyers misrepresented their unrelated representation of Trans World to the Northern District of New York court itself. I conclude, therefore, that Deep's allegations are insufficient.

### (c)    In the Department of Justice Investigation, Summer, 2001

Deep alleges that the Department of Justice investigated the Record and Movie Companies for certain antitrust violations in the summer of 2001. Id. ¶ 178. He states that he was asked to provide information relevant to the investigation during an interview, and that the Lawyers advised him "not to

---

[15] Contrary to the assertions of Compl. ¶¶ 281-90, there is no fraud upon the court in the July 15, 2005, letter to me docketed as Docket Item 19 in 05-cv-118. As the letter states, Boies, Schiller & Flexner LLP is not counsel of record for Trans World in the current lawsuits.
[16] Deep asserts that in that case BuddyUSA (one of his companies) had an interest adverse to his own, Compl. ¶ 172, and that Trans World was a significant shareholder in BuddyUSA, id. ¶ 173. He says that the Lawyers represented him, not Trans World, in that court. Id. ¶¶ 172-75.

answer any questions involving Tran World," because Trans World "would be providing its own information . . . separately."  Id. ¶ 180.  Deep asserts that Trans World purposefully never provided its own information.  Id. ¶ 184.  Quite simply, this is not a claim for fraud on the court.  The Department of Justice is not a court.

### (d)    In the Judicial Panel on Multidistrict Litigation, the Eastern District of Virginia and the Northern District of Illinois, December, 2001

It is difficult to understand the thrust of these allegations at ¶¶ 186-204. Apparently, Deep alleges that the Lawyers had the same conflict of interest in these other courts that they had in this court (*i.e.*, that they represented Trans World in In re Compact Disc Litigation while they represented Deep before these other courts).  See id. ¶ 202.  To the extent that this is the claim, it fails for the reasons already given, that an undisclosed conflict of interest does not rise to fraud on the court.  Deep might also be alleging that David Boies and Boies, Schiller & Flexner committed malpractice by retaining Straus & Boies as "liaison counsel in Virginia," or by not taking certain actions during discovery, or by continuing to represent him even after Boies, Schiller & Flexner acknowledged that it had a conflict of interest.  Id. ¶¶ 188-90.  He might be alleging that Straus & Boies also committed malpractice.  Id. ¶ 189.  Such claims fail for the reason given already: malpractice is a wrong visited upon a "single litigant," not a fraud upon the court.

**(e)    In the Northern District of New York Bankruptcy Court, throughout 2002**

Deep alleges that the Lawyers represented him in Bankruptcy Court while they represented Trans World here in <u>In re Compact Disc Litigation</u>, that this was an undisclosed conflict of interest, <u>id</u>. ¶ 211, and that the Lawyers committed malpractice by failing to conduct discovery in his cases properly, <u>id</u>. ¶¶ 205-10.  These allegations fail to state claims of fraud on the court, for the reasons I have given previously.[17]

**(f)    In the Northern District of Illinois, September through November, 2002**

Deep alleges that during his bankruptcy case he identified AbovePeer Inc. (one of his companies) as having an adverse interest in his bankruptcy estate.  <u>Id</u>. ¶¶ 212-14.  Because of this conflict between him and AbovePeer, he asked Boies, Schiller & Flexner to withdraw its representation of him in the Northern District of Illinois in the copyright case, <u>In re Aimster Copyright Litigation</u>.  <u>Id</u>. ¶ 215.  He asserts that the firm moved to withdraw, but failed to disclose the potential conflict of interest as a reason.  <u>Id</u>. ¶ 216.  As I have already said, failure to disclose a conflict is not a fraud upon the court.

The motion to withdraw was denied, however, <u>id</u>. ¶ 217, and Deep alleges that the "concealment of its conflict of interest was a fraud perpetrated upon

---

[17] I am aware of authority suggesting that bankruptcy court practice has a higher standard because the bankruptcy rules require detailed written disclosure before a lawyer can be appointed by the court.  <u>See</u> Fed. R. Bankr. P. 2014 (bankruptcy lawyer's application for employment by estate must state "to the best of the applicant's knowledge, all of the [lawyer's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee").  <u>Pearson v. First N.H. Mortgage Corp.</u>, 200 F.3d 30, 38 (1st Cir. 1999); <u>see also</u> <u>In re eToys, Inc.</u>, 331 B.R. 176 (Bankr. D. Del. 2005); <u>In re R&R Assoc. of Hampton</u>, 248 B.R. 1 (Bankr. D.N.H. 2000).  Deep has not asserted that the Lawyers ran afoul of this standard in their bankruptcy representation in the Northern District of New York.

the court that caused [him] to be subject to an injunction entered on October 30, 2002, that shut down [his] business," id. ¶ 220.  In an effort to demonstrate that the "concealment" was a fraud on the court, Deep asserts that his lawyers later renewed the motion, this time including as a reason the potential conflict of interest, and "[a]s a result of Boies Schiller finally admitting . . . its conflict of interest to the court, [the] motion to withdraw was granted."  Id. ¶ 226.[18]  Not only is there still no allegation of the necessary affirmative misrepresentation, but there is also nothing in the court's order to support Deep's interpretation.  The court stated:

> [A] partner in the firm of Boies, Schiller & Flexner advised this Court that the firm and Defendant Deep "reached an agreement" on September 17, 2002 that its withdrawal "would be in Defendant's best interest."   [The lawyer] explained that there is a "difference between client and counsel as to the manner in which the action should be defended" that prevents counsel "from rendering effective assistance . . . to Defendants."
>         This Court deems that Defendants' counsel have demonstrated that good cause exists for their withdrawal from representing Defendants in this matter.  We therefore grant Defendants' counsel motion to withdraw.

In re Aimster Copyright Litig., No. 01-C-8933 (N.D. Ill. Nov. 4, 2002) (Docket Item 58) (citations removed).[19]

I make no determination as to whether there is any basis for bar discipline or a legal malpractice lawsuit against the Lawyers.  But there is no

---

[18] Deep also adds at ¶ 225 the undisclosed conflict of representing Trans World in In re Compact Disc Litigation.

[19] I may properly consider "matters of public record in deciding a Rule 12(b)(6) motion."  Greene v. Rhode Island, 398 F.3d 45, 48-49 (1st Cir. 2005) (quoting Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)).  The public record includes filings in other cases.  See In re Colonial Mortgage Bankers Corp., 324 F.3d at 16-17 (looking to complaint filed in other case to determine whether affirmative defense satisfied).

sufficient allegation to support Deep's claim of fraud on the court.  I therefore **DISMISS** Count I as to the Lawyers from both complaints.

### (2)    *The Record and Movie Companies*

Deep does not allege in the complaint that the Record and Movie Companies committed fraud on the court.[20]  Therefore, I **DISMISS** Count I as to the Record and Movie Companies from both complaints.

### (3)    *Trans World*

The complaint, taken as a whole, could fairly be read to allege that Trans World had knowledge of the Lawyers' simultaneous representation of Deep and Trans World in all the foregoing courts or fora.  See Compl. ¶ 88 (alleging that an agent of Trans World, Bill Duker, advised Deep to retain the Lawyers).  Nevertheless, this Count fails as to Trans World for the same reasons that it fails as to the Lawyers: Deep has not alleged that Trans World made any affirmative misrepresentation to a court.  Therefore, I **DISMISS** Count I as to Trans World from both complaints.

### *B.*    **60(b)(3) Fraud**

Deep says that if his claim for fraud on the court does not survive, he should be able to proceed under Fed. R.  Civ. P. 60(b)(3), Opp'n 14-16, which permits attack on a final judgment for "fraud . . . of an adverse party."  Deep

---

[20] In his opposition, Deep argues that the Record and Movie Companies are implicated in allegations of fraud on the court.  Opp'n at 11-12.  But his arguments are based on vague assertions of "collusion," and they do not change the fact that his complaints fail to allege any conduct by the Record and Movie Companies that could constitute fraud on the court (except for a conclusory assertion that they were part of an "inducement of or conspiracy in the fraud. . . ." Compl. ¶ 311.

has not provided factual allegations in his complaint to support such a claim. It therefore fails.

### C.    Sarbanes-Oxley Claim

This is Count VII of the Second Amended Complaint (05-cv-118). It is not asserted in the First Amended Complaint (05-cv-149).

In this Count, Deep alleges that the defendants conspired to violate the Sarbanes-Oxley Act, 18 U.S.C § 1513(e). Compl. ¶¶ 492-93. A liberal reading suggests that Deep is alleging that the defendants took harmful action against him because he "conveyed truthful information to the Department of Justice . . . relating to the possible commission [by the Record Companies] of the federal offenses of criminal antitrust violations and securities fraud." Compl. ¶ 178. In retaliation for this "whistleblowing," Deep contends, Hilary Rosen (the president of a Record Company defendant) directed Robert Higgins (the president of Trans World) to "fire" Deep by telling Higgins over the phone "Let's just work this out." Compl. ¶ 184.

The Record and Movie Companies argue that U.S.C. § 1513(e) creates no private cause of action, and that only 18 U.S.C. § 1514A confers a private right of action to remedy whistleblowing. Because section 1514A requires an actual employment relationship, they contend that Deep may not assert this claim.[21] Record & Movie Cos. Mem. at 29-30. Trans World and the Lawyers adopt these arguments. Trans World Mem. at 30; Lawyers Mem. at 8 n.9. Deep concedes

---

[21] See 18 U.S.C. 1514A(a) ("No [publicly traded] company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against [a whistleblower] employee in the terms and conditions of employment . . . ."); id. § 1514A(b)(1) (conferring standing to sue in district court upon any "person who alleges discharge or other discrimination . . . in violation of subsection (a)").

that he was not an employee (and thus cannot meet the requirements of 18 U.S.C. §1514A), Opp'n at 19, but argues that "Congress implied a private cause of action for a class of persons like [him] [with 18 U.S.C. §1513(e)], though it did not expressly provide one," id. at 20.

18 U.S.C. §1513(e) prohibits "knowingly, with the intent to retaliate, tak[ing] any action harmful to any person . . . for providing to a law enforcement officer any truthful information relating to the . . . possible commission of any Federal offense . . . ." 18 U.S.C. § 1513(e).   But this provision is criminal, not civil.  It prescribes fines or imprisonment of up to ten years as punishment.  See Carnero v. Boston Scientific Corp., 433 F.3d 1, 10 (1st Cir. 2006) (18 U.S.C. § 1513 "provid[es] *criminal* sanctions for retaliation") (emphasis supplied).  It therefore does not grant Deep a private right of action. Private citizens "lack[] a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973); see also Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Generally, a private citizen has no authority to initiate a federal criminal prosecution.").  As the Seventh Circuit has stated:

> Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are . . . poor candidates for the imputation of private rights of action. . . . [T]he Supreme Court has been unwilling to treat criminal laws as implying private entitlements . . . and has held that the victims of crime therefore lack any legal right to compel a criminal prosecution.  That reluctance to form private entitlements from criminal prohibitions blocks the judicial creation of private rights of action as well.

Chapa v. Adams, 168 F.3d 1036, 1038 (7th Cir.1999) (citations omitted); see also Alexander v. Sandoval, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.") (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981) (quotation marks omitted)).

Accordingly, I **DISMISS** Count VII from the 05-cv-118 complaint as to all defendants.

## D.  *Federal Antitrust Claims*

These are Counts II and III of the Second Amended Complaint (05-cv-118).  They are not asserted in the First Amended Complaint (05cv149).

In Counts II and III, Deep asserts both *per se* and rule of reason violations of § 1 of the Sherman Act, 15 U.S.C. § 1, alleging wide-ranging antitrust conspiracies involving all the defendants.  Although Deep mentions various alleged promotional schemes and kickbacks, his allegations boil down to three theories of antitrust conspiracy.  First, he asserts that the defendants engaged in a price-fixing conspiracy to maintain the minimum prices of retail CDs, and that he was harmed as a provider of a technology that calculated discount prices of CDs.  Second, he alleges that the defendants engaged in a concerted refusal to license copyrighted musical recordings in order to prevent competition in online music distribution.  Third, he asserts that the defendants engaged in a price fixing conspiracy and a concerted refusal to license copyrighted movies in order to prevent competition in the online "video-on-demand" market.

20

The Record and Movie Companies assert that Deep's antitrust claims should be dismissed because he has failed to allege antitrust standing or antitrust injury, and that he is otherwise an improper plaintiff according to the factors of Associated General Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983). Record & Movie Cos. Mem. at 12-20. They also argue that he has not sufficiently alleged a conspiracy. Record & Movie Cos. Mem. at 20-23. Trans World and the Lawyers adopt these arguments. Trans World Mem. at 28-30; Lawyers Mem. at 8.

The First Circuit has instructed that the six factors set forth in Associated General Contractors "must be evaluated on a case-by-case basis to determine whether a plaintiff has standing to bring an antitrust action." Serpa Corp. v. McWane, Inc., 199 F.3d 6, 10 (1999).[22] Although, no single factor is dispositive, "the absence of antitrust injury weighs heavily against a grant of standing." Sullivan v. Tagliabue, 25 F.3d 43, 47 n. 9 (1st Cir. 1994). Antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Serpa Corp., 199 F.3d at 10 (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). "[T]he presumptively 'proper' plaintiff [to allege an antitrust injury] is a customer who obtains services in the threatened market or a competitor

---

[22] These factors are:

> (1) the causal connections between the alleged antitrust violation and the harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

Serpa Corp., 199 F.3d at 10.

who seeks to serve that market." SAS of Puerto Rico, Inc. v. Puerto Rico Tele. Co., 48 F.3d 39, 44 (1st Cir. 1995). The First Circuit has made it clear that suppliers are not preferred plaintiffs. Id. In general, suppliers are "held not to have suffered 'antitrust injury' . . . ." Id. Suppliers *may* have an antitrust claim if the supplier "is a participant in the very market where competition is impaired." Id.

### (1)  *The alleged conspiracy to maintain minimum retail CD prices*

Deep asserts that the record companies conspired to maintain the minimum advertised price of retail CDs, thereby maintaining higher prices for consumers. See, e.g., Compl. ¶¶ 351, 355, 363-64. He asserts that in order to maintain their prices, the Record Companies exerted financial pressure on Trans World to "impose increased pricing policies, rather than use" Deep's technology, id. ¶ 351; "prosecuted unlawful and sham litigation" against Deep "to interfere with and delay" development of his technology, id. ¶ 356; and "prevented [Trans World] from performing its contractual obligation to [Deep] . . . to track and make payments of promotional funds . . .", id. ¶ 365. As a consequence of these combined actions, Deep alleges, he "was effectively forced out of . . . business." Id. ¶ 380.

Under this first theory of antitrust conspiracy, Deep alleges impaired competition in the retail CD market. Deep does not allege, however, that he was a consumer who paid a higher price for CDs or that he was a competitor adversely affected by the minimum advertised pricing. Instead, Deep alleges that he developed a technological product (Aimster), which he licensed to Trans

World.[23]   That technology, Aimster, was designed to determine a consumer's discount CD price online, and was intended to be used by Trans World in *its* retail sale or distribution of CDs.   Deep expected to receive profits based on Trans World's use of his technology.   Id. ¶ 336 (alleging that Deep would be entitled to "remuneration based on [Trans World's] conduct of business" in consideration for granting Trans World exclusive rights to his "targeted-marketing invention.").

Deep does not bring his claim as either a consumer or a competitor in the CD retail market but as a supplier of a technological product that Trans World (a CD distributor) refused to use.[24]   As a supplier he is disfavored as a plaintiff.   SAS of Puerto Rico, 48 F.3d at 44.   Although the First Circuit has recognized that "there may be some instances where presumptively disfavored plaintiffs do have standing to bring an antitrust action," see Serpa Corp., 199 F. 3d at 12, Deep has not provided any reason why he fits the exception, and "good cause" is required.   SAS of Puerto Rico, 48 F.3d at 45.   Furthermore, Deep's injuries flow from an alleged breach of contract, unlawful transfer of

---

[23] Deep has alleged on the one hand that Trans World is a co-conspirator of the Record and Music Companies, see id. ¶¶ 318-19, and on the other hand that it was coerced by the Record and Music Companies (rather than voluntarily agreeing) to do what it did, id. ¶ 351.  If Trans World was a co-conspirator, Deep was a would-be supplier to an antitrust violator that "in the course of its own violation allegedly breached its agreement to use" Deep's technology.  As such, he has no standing.   SAS of Puerto Rico, 48 F.3d at 44.  Alternatively, if Deep's theory is that Trans World was a victim of the record companies' conspiracy, Deep nevertheless lacks standing.   See id. (a "*supplier* who suffers because an antitrust violation curtails a business that would otherwise have purchased from [it]" has not "suffered antitrust injury") (internal quotation marks omitted).

[24] Deep does allege that he formed an unincorporated joint venture with Trans World.  Compl. ¶ 31, Opp'n at 22 *ff*.  But as I explain in text later, in dismissing the breach of fiduciary claim, Deep has not set forth adequate factual allegations to support his assertion that Deep and Trans World were engaged in a joint venture.  As a result, Deep cannot be characterized as a competitor in the market for online distribution of music.

proprietary information, and breach of fiduciary duty.  These are not the type of injury that the antitrust laws were meant to protect.  I conclude that Deep does not have standing to bring a claim under this theory of antitrust conspiracy.

### (2)    *The alleged conspiracy to prevent licensing of online music*

Deep also alleges that certain Record Companies "persistently and concertedly refused to license any online distribution of their copyrighted works by any entity other than their own" online distributors.  Compl. ¶ 386.  This concerted refusal to license was effective, he maintains, because these defendants "controlled access to over 85% of the world's copyrighted musical works."  Id. ¶ 385.  Such conduct, if proven, can constitute a violation of the antitrust laws.  Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1185 n.63 (1st Cir. 1994); Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc., 219 F.3d 92, 103 (2d Cir. 2000) ("[a] concerted refusal to license copyrighted [works] in order to prevent competition . . . is a boycott that, if proven, violates" antitrust law) (citing Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212 (1959); Broadcast Music, Inc. v. Columbia Broad. Sys., Inc., 441 U.S. 1, 19 (1979).

Deep does not allege, however, that he sought and was denied a license by the record companies.  Instead he alleges that during "the early stages of [his] business, [he] entered into exclusive licensing agreements with Trans World . . . ."  Compl. ¶ 387.  Deep asserts that the Record and Movie Companies gained "proprietary information about and control over" his contract with Trans World.  Id. ¶ 390.  He further asserts that the defendants

24

transferred this proprietary information to MusicNet on or about October 2004
and that approximately six months later MusicNet was sold for "an amount in
excess of $25 million [ ], the benefit of which directly resulted from the transfer
to MusicNet of [his] proprietary information . . . ."  Id. ¶¶ 390-91.  But that sort
of injury is not the concern of the antitrust laws:

> [A]ntitrust injury [is] an injury of the type the antitrust laws
> were intended to prevent and that flows from that which
> makes defendants' acts unlawful.  The harm should reflect
> the anticompetitive effect either of the violation or of
> anticompetitive acts made possible by the violation.   It
> should, in short, be the type of loss that the claimed
> violations . . . would be likely to cause.   Consequently, a
> proper plaintiff must prove more than injury causally linked
> to an illegal presence in the market.

Serpa Corp., 199 F.3d at 10 (internal citations and quotation marks omitted).
Without an allegation that he was denied a musical recording license, and that
this led to harm, I conclude that Deep does not have standing to bring a claim
under this theory of antitrust conspiracy.

### (3)     *The alleged conspiracy to restrain the video-on-demand market*

Deep alleges that all the defendants engaged in anticompetitive activity in
the "video-on-demand" market.   Compl. ¶¶ 405, 407.   "Video-on-demand
services allow consumers to order and watch theatrical motion pictures
through a personal computer at any time, 24 hours per day, 7 days per week."
Id. ¶ 392.  Deep asserts that he was a competitor in this market, contending
that his Aimster technology "was designed to be used for the technology and
services necessary to provide" this service.   Id. ¶ 394.  He alleges that he
entered into licensing agreements with Trans World to distribute movies using
the Aimster system, and that all the defendants, beginning at an unknown

date, "acted in concert to conspire and combine to fix prices, organized a group boycott of Aimster, reneged on their licensing agreements that [the defendants] promised [him] were negotiated, and otherwise tried . . . to destroy Aimster's viability." Id. ¶ 408.

As before, it appears that Deep is alleging that the defendants engaged in a concerted refusal to license and to fix prices.  Although Deep has asserted that he was injured by the defendants "conspiracy and combination," id., what he fails to allege in this count is any factual underpinning for an antitrust conspiracy.  For an alleged antitrust conspiracy to survive a motion to dismiss, the plaintiff must "allege a *factual* predicate concrete enough to warrant further proceedings . . . ." DM Research, Inc. v. College of American Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis original).  Although "almost any agreement between independent actors that restrains competition" could be the requisite conspiracy, a plaintiff still must plead such an agreement in more than conclusory terms.  Id. at 55.  "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." Id.; see also In re Compact Disc Litig., 138 F. Supp.2d 25, 28 (D. Me. 2001) (quoting DM Research, Inc., 170 F.3d at 55).

Deep's Second Amended Complaint fails to meet this requirement.  It consists largely of conclusory assertions that there was a combination and conspiracy, coupled with an assertion that a Sony announcement of Movielink, a joint venture to distribute movies as video-on-demand, was a "device" for collusion.  Compl. ¶¶ 406, 408.  The factual assertions are insufficient to withstand the motion to dismiss.

I **DISMISS** Counts II and III of the Second Amended Complaint in 05-cv-118 as to all defendants.

**E.    RICO Claim**

This is Count VI of the Second Amended Complaint (05-cv-118).  It is not asserted in the First Amended Complaint (05-cv-149).

Deep alleges that the defendants engaged in unlawful activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d).   Compl. ¶¶ 433-91.[25]   He asserts that they committed and conspired to commit various predicate acts including: mail and wire fraud, 18 U.S.C. §§ 1341-43, 1346; receipt and payment of monies and other things of value, 18 U.S.C. § 1954; interstate transportation of stolen property, 18 U.S.C. § 2314; criminal infringement of a  copyright, 18 U.S.C. §2319; extortion, 18 U.S.C. § 1951; and obstruction of justice, 18 U.S.C. §§ 1512-13, 1519.

RICO claims are subject to a heightened pleading standard, <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 450 (1st Cir. 2000), and "require[ ] more detailed statements of claim . . . ." <u>Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 n.1 (1st Cir. 1992).  A RICO plaintiff must allege the following elements in order to survive a motion to dismiss:  "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Bessette</u>, 230 F.3d at 448 (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985)).

---

[25] It is unclear from Deep's complaint if he is alleging only a violation of 1962(d) or a violation of 1962(c) and (d).   The defendants read Deep's complaint as alleging only a violation of 1962(d).  Though the defendants' reading is reasonable, I treat his complaint as alleging both a substantive violation of 1962(c) and a conspiracy claim under 1962(d).   In any event, the defendants' motions to dismiss clearly argue that Deep has failed to allege the necessary elements to satisfy a claim under both 1962(c) and (d).   Record & Movie Cos. Mem. at 23-29; Lawyers Mem. at 9-10; Trans World Mem. at 30.

"Racketeering activity" is defined statutorily; it includes only the various offenses listed under 18 U.S.C. §1961(1).  A "pattern" requires at least two predicate acts of such racketeering activity, 18 U.S.C. § 1961(5), and the plaintiff must "demonstrate that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity . . . .'"  North Bridge Assoc., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001) (quoting Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 15 (1st Cir. 2000)) (emphasis original).  A "RICO conspiracy claim must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes."  Miranda v. Ponce Fed. Bank, 948 F.2d 41, 47 (1st Cir. 1991) (dismissing conclusory conspiracy claim).

Moreover, to have standing in a civil RICO claim, a plaintiff must allege that he has been "injured in his business or property by reason of" the claimed RICO violations.  18 U.S.C. §1964(c).  In order to satisfy this requirement, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged."  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).  This requires a showing of proximate cause; "[o]therwise, plaintiffs may not recover in a civil RICO claim if their injuries are so far removed from the defendant's acts that they are indirect and derivative."  Geo. Lussier Enter., Inc., 393 F.3d 36, 51 (1st Cir. 2004).  The injury must be "caused by the commission of a [section 1961] predicate act," and not just *any* overt act furthering the RICO conspiracy.  Miranda, 948 F.2d at 48.

Here, the Record and Movie Companies, Trans World and the Lawyers all argue that Deep has failed to adequately allege: (1) an enterprise, (2) a pattern

of racketeering activity, (3) the actual predicate acts themselves, (4) a conspiracy, (5) that the defendants each knowingly agreed to commit two predicate acts, and (6) that his injuries were caused by the RICO acts.  Record & Movie Cos. Mem. at 23-29; Lawyers Mem. at 9-10; Trans World Mem. at 30 (adopting others' arguments).  I agree that Deep's RICO allegations fail to state a claim upon which relief can be granted.  I take each allegation in turn.

### (1)    *Mail and Wire Fraud*

Deep alleges that acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, constituted predicate RICO acts.  Compl. ¶ 467(a).[26]  Because Deep is alleging fraud here, he must satisfy Fed. R. Civ. P. 9(b)'s requirement that he plead the circumstances "with particularity."  The First Circuit says that "[t]his degree of specificity is no more nor less than we have required in general fraud and securities fraud cases."  New Eng. Data Servs., Inc., v. Becher, 829 F.2d 286, 290 (1st Cir. 1987).  Deep alleges that the defendants' "use of the mails and wires to perpetrate their fraud involved thousands of communications," Compl. ¶ 461, and that they "caused matter and things to be delivered" in the mail, including "correspondence, policy materials, requests for proposals, invoices, payments and CD/DVDs sent from or to Label and Studio Defendants, and the resulting Transfers of Funds made by wire transfer by Trans World . . . ."  Id. ¶ 467(a).  That statement is plainly insufficient.  Under Rule 9(b) the complaint is required to "go beyond a showing of fraud and state the *time, place and*

---

[26] Deep also cites 18 U.S.C. §1342 (unlawful use of fictitious name or address) and §1349 (definition of "scheme or artifice to defraud") in his mail and wire fraud allegations.  Compl. ¶ 467(a).  Whatever these claims may have been, Deep has waived them.  Opp'n at 30 (Deep only refers to §§ 1341, 1343).

*content of the alleged mail and wire communications perpetrating that fraud.*"
Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir.
2006) (quoting Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir.
1991) (emphasis added)).  See Ahmed, 118 F.3d at 889 (upholding dismissal on
9(b) grounds because "pleading contains only the bald assertion that the
defendants (unspecified) used the U.S. mails to [commit fraud], that the
defendants (again unspecified) used the U.S. Postal Service by mailing
unspecified materials, and that the defendants used wire communications").
Deep's conclusory allegations, made only generally against the thirty-plus
defendants, fall measurably short of the particularity required by Rule 9(b).[27]

The most specific allegation of mail or wire fraud in the complaint is
Deep's "Transfers of Funds" language:

> [U]nbeknownst to me, Trans World's transfer of funds and
> loan and securities documents by wire in order to finance
> and gain control of my business (of $200,000 in October
> and again in November of 2000, of $500,000 in January of
> 2001 and of 4 payments of $250,000 during the period
> February 2001 to August 2001) ("Transfer of Funds") were
> an investment at least in part of racketeering income from
> kickbacks paid to Trans World by the Labels and Studios,
> including fraudulent stock credits, unlawful profits from
> "clears," and rigged bids for promotional funds, and also
> from interstate transportation of stolen money of numerous
> investors in California, New York and other states
> throughout the United States.

Compl. ¶ 450.  That assertion is obviously vague on the dates of the wire
transmissions.  More important, it fails utterly to identify *any* recipient of the

---

[27] The Second Circuit has said: "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  DiVitorrio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).  The First Circuit seems to agree.  See Romani v. Shearson Lehman Hutton, 929 F.2d 875, 880 n.4 (1st Cir. 1991).

wire transfers.   It falls far short of Rule 9(b)'s requirement, and a defendant cannot reasonably be asked to respond to it.[28]

I heed the First Circuit's admonition, however, that dismissal should not be automatic.   Becher, 829 F.2d at 290.   I assess, therefore, whether information about the defendants' use of the mails or wires for the alleged fraud was "likely in the exclusive control of the defendant[s,]" id., such that Deep needs discovery on that topic first, with the opportunity to file a Third Amended Complaint to meet Rule 9(b)'s standards thereafter.   Whether any mail or wire communications "were between the defendants solely or between the defendants and the plaintiff[] . . . would affect the . . . factor of whether the facts were peculiarly within the defendants' control."   Id. at 291-92.

To the extent that I can follow Deep's reasoning on his RICO theory of mail and wire fraud, it is clear that some, if not many, of the allegedly fraudulent communications were directly to him.   See, e.g., Compl. ¶ 459 ("providing me with false, misleading and incomplete information"), ¶ 461(c) ("misleading materials intended to induce me").   There was nothing to prevent Deep, therefore, from identifying dates, and himself as a recipient, in the two

---

[28] One possible interpretation is that Trans World fraudulently wired funds to the other defendants, the Labels and Studios, in furtherance of its RICO conspiracy against Deep.   But Deep alleges that the first such transfer occurred in October 2000, which is at a time before he had even engaged Attorney David Boies (November 2000, id. ¶ 89,) to negotiate the relationship with Trans World. Thus, this reading makes no sense.

Another interpretation is that Deep is describing wire transfers that Trans World made directly to him in order to gain control of his targeted marketing method.   Such an interpretation, although slightly more comprehensible, fails to raise any recognizable RICO claim against the defendants.   The assertion would be that the money Trans World transferred to Deep was "an investment at least in part of racketeering income from kickbacks paid to Trans World by the Labels and Studios."   Id. ¶ 450.   But the complaint fails to account for how such a transfer of kickback funds to Deep injured Deep.

Fortunately, I am not required to act as a mind reader.   Feinstein, 942 F.2d at 44.

amended complaints he has already filed.  Then the defendants would have been able to respond to a specific mail or wire transmission and admit or deny that it qualified under RICO.  As the First Circuit said in another RICO case, the "underlying rationale for relaxation of pleading requirements—that the needed information is likely to be in the exclusive control of the defendant—is absent."  Efron, 223 F.3d at 16 (citation omitted).

Considering Deep's previous two revisions of his complaint, I conclude that his failure to supply specific allegations in the Second Amended Complaint makes this an inappropriate case for the generous discovery rule adopted in Becher.  "Although Becher may in certain circumstances give a plaintiff a second bite at the apple, its generous formulation is not automatically bestowed on every litigant."  Feinstein, 942 F.2d at 44.  In deciding which cases are appropriate for Becher discovery,

> the court must keep in mind the purpose of Rule 9(b),
> including avoiding groundless claims and strike suits, . . .
> and ensuring that defendants have been adequately put on
> notice to enable them to give meaningful responses. . . . On
> the other side of the scale, the court should note the policy
> in favor of allowing amendments and trying cases on their
> merits, and against dismissals which would deny plaintiffs
> their day in court.

Becher, 829 F.2d at 292.  Here, these factors call for dismissal of the mail and wire fraud predicate acts without opportunity for further discovery.

### (2)    *Receipt and payments of monies and other things of value*

Deep alleges that the defendants committed the predicate act found in 18 U.S.C. § 1954.  Compl. ¶ 467(d).  This claim is incomprehensible, for section 1954 prohibits employees of welfare benefit or pension plans from accepting

bribes.   Deep's allegations in no way implicate a welfare benefit or pension plan.

### (3)     *Interstate transportation of stolen property*

In his complaint, Deep makes an extremely vague allegation of interstate transportation of stolen property,  <u>see</u> 18 U.S.C. §2314, as a predicate act. Compl. ¶ 467 (e).   In his opposition to the defendants' motion to dismiss challenging its vagueness, however, Deep does not address it.   A party's failure to oppose specific arguments in a motion to dismiss results in waiver of those issues.  <u>Graham v.  United States</u>, 753 F. Supp. 994, 1000 (D. Me. 1990) (<u>see</u> <u>Collins v. Marina-Martinez</u>, 894 F.2d 474, 481 n.9 (1st Cir. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.).   I treat it, therefore, as waived.

### (4)     *Criminal infringement of a copyright*

Deep alleges that  as predicate acts  the Record and Movie Companies criminally infringed copyrights.   Compl. ¶ 467(f).   <u>See</u> 17 U.S.C. §506(a)(1)(A). He states that the Record and Movie Companies created CDs and DVDs "for the primary purpose of fraudulently paying kickbacks to Trans World and/or fraudulently inflating the[ir] revenues . . . , while fraudulently depriving the artists of their rightful royalties."   Compl. ¶ 467(f).   The only alleged injury to Deep is that these CDs and DVDs were used "to obtain the Transfers of Funds to control and finance [his] business."   <u>Id</u>.   It is clear from these allegations that Deep cannot meet RICO's strict causation requirement; even assuming that the defendants did indeed infringe copyrights, the victims of these acts are the

artists themselves who, as Deep alleges, were fraudulently deprived of their rightful royalties.   Deep's claimed injury, on the other hand, is precisely the "indirect and derivative" injury that does not meet the causation requirement, Geo. Lussier Enter., Inc., 393 F.3d at 51, and cannot be said to be "caused by the commission of [the] predicate act . . . ."  Miranda, 948 F.2d at 48.

### (5)    Extortion

Deep's complaint alleges that beginning around July, 2001, Trans World and the Record and Movie Companies committed the predicate act of interfering with interstate commerce by means of extortion under 18 U.S.C. § 1951, Compl. ¶ 467(g), but there is no mention of the extortion allegation in Deep's opposition to the motion to dismiss.  Opp'n at 26 ("The defendants each engaged in predicate acts that include mail fraud, wire fraud, money laundering, copyright infringement, obstruction of justice and racketeering [with no mention of extortion]. . . .").   Because the defendants challenged the sufficiency of this allegation in their motion to dismiss, Record & Movie Cos. at 27, I treat Deep's failure to respond as a waiver of his extortion allegation.[29]

### (6)    Obstruction of justice

Deep alleges that as predicate acts the defendants instructed him to withhold information about Trans World from Department of Justice Investigators, in violation of 18 U.S.C. § 1512 (witness tampering) and § 1519

---

[29] Even had Deep responded in his opposition, his complaint fails to state a claim under 18 U.S.C. § 1951.  "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  Deep does not allege that the defendants obtained property from him with his consent or that they wrongfully used "actual or threatened force, violence, or fear," or "color of official right" to do so.  Thus, his extortion allegation fails.

(concealing records in a federal investigation), and that the defendants "fired" him in retaliation for conveying truthful information in that investigation, in violation of 18 U.S.C. § 1513 (retaliation against a witness).  Compl. ¶¶ 467(h), 178-85.[30]

The First Circuit upheld a dismissal of a civil RICO claim based on obstruction of justice allegations very similar to Deep's, for failure to establish a "pattern of racketeering activity" as required by 18 U.S.C. § 1961(5). Miranda, 948 F.2d at 45-46.  In Miranda, the plaintiff, a bank teller, alleged that she was encouraged "to mislead federal investigators" by her superiors, and that when she cooperated with the investigation, she was fired.  Id. at 43. The court viewed the separate allegations of harassment relating to a single federal investigation as only one predicate act, saying that viewing "each individual incident of harassment as constituting a [separate] predicate act . . . . would eviscerate the pattern requirement upon which RICO liability depends."  Id. at 46 n.6.  The Court dismissed the RICO claim saying, "[w]e believe that the effort to rest a RICO count on this jerry-built foundation [is flawed]."  Id. at 45.

---

[30] Deep's obstruction of justice allegations in ¶ 467(h), standing alone, are almost entirely incoherent.  My best understanding is that sections (i) & (iii) are referring to the allegations regarding the 2001 Department of Justice investigation outlined in ¶¶ 178-85 of the Second Amended Complaint.  To the extent that he is referring to anything else, I **DISMISS** the allegations for failure to meet the heightened pleading standard for a civil RICO claim. Bessette, 230 F.3d at 450.  I also do not address ¶ 467(h)(ii), obstruction of justice in In re Compact Disc Litigation, for the reasons set forth above, dismissing similar claims for fraud upon the court.

Following <u>Miranda</u>, I find that Deep's obstruction of justice allegations regarding a single federal investigation fail to demonstrate the requisite "pattern of racketeering activity" required by 18 U.S.C. § 1961(5).

\* \* \* \* \*

Because the Complaint fails to allege adequately any "pattern of racketeering activity," Deep's 1962(c) substantive civil RICO claim must fail. As a result, I need not address his 1962(d) conspiracy claim. <u>Efron</u>, 223 F.3d at 21 ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails.").

I therefore **DISMISS** Deep's RICO claim as to all defendants.

## F.   *Bankruptcy-Related Claims*

This is Count V of the Second Amended Complaint (05cv118). It is not asserted in the First Amended Complaint (05cv149).

Deep fails to oppose the defendants' arguments for dismissal of Count V of the Second Amended Complaint, insofar as that claim alleges a violation of the automatic stay entered in his bankruptcy proceedings, 11 U.S.C. §362. That claim is therefore waived.

As for fraudulent transfer, Deep alleges in Count V that the "Label and Studio Defendants paid, and continue to pay, promotional funds and remuneration to Trans World to which I am entitled, in an amount that Trans World has negligently failed to track or account for." Compl. ¶427. The Record and Movie Companies, however, contend that "Deep had no valid interest in the property that was allegedly transferred . . . ." Record and Movie Cos. Mem. at 32. Trans World adopts this argument as well. Trans World

Mem. at 30.   The Lawyers do not address this issue because they argue "the cause of action for fraudulent transfer . . . [is] not asserted against the Attorney Defendants."   Lawyers Mem. at 17 n.12.   In Deep's opposition, he ignores the Record and Movie Companies' argument entirely and advances a completely different theory of fraudulent transfer, focusing on the Lawyers.   See Opp'n at 46.   I therefore consider the fraudulent transfer claim against the Record and Movie Companies and Trans World waived.   As for Deep's new arguments against the Lawyers in his opposition, Count V does not support them.   See Compl. ¶¶ 426-32 (no mention of lawyers).   I treat the fraudulent transfer claim waived as to all defendants.

*  *  *  *  *

As a result, I **DISMISS WITH PREJUDICE** all Deep's federal claims.   Since there are no federal claims remaining, the Lawyers urge me to abstain from deciding the state law claims against them, and to leave those claims to New York state court.   For reasons that appear near the end of this opinion, I conclude that the Lawyers' abstention arguments are well-grounded.   I therefore decline to decide the state law claims against them and **DISMISS WITHOUT PREJUDICE** all remaining claims against the Lawyers.   The other defendants, however, have not asked me to abstain (nor has the plaintiff Deep). I therefore address the state law claims against the other defendants although, as will appear, I decide to abstain as to one claim against Trans World in each of the two lawsuits.

**G.    Waiver: New York Consumer Protection Act, Negligence, Conspiracy, Tortious Interference, Piercing the Corporate Veil, Declaratory and Injunctive Relief**

This analysis applies to Counts IV, X and XII-XV of the Second Amended Complaint (05-cv-118), and Counts IV, VI-IX of the First Amended Complaint (05-cv-149).

The Record and Movie Companies assert that Deep has abandoned six claims.  Record & Movie Cos. Reply Mem. in Supp. of Mot. to Dismiss ("Record & Movie Cos. Reply") at 10 (Docket Item 63).  I agree that Deep has failed to submit *any* opposition to the defendants' motions to dismiss five of these claims: negligence (Count X in 05-cv-118 and Count IV in 05-cv-149); conspiracy (Count XII in 05-cv-118 and Count VI in 05-cv-149); tortious interference with contract or business relations (Count XIII in 05-cv-118 and Count VII in 05-cv-149); piercing the corporate veil (Count XIV in 05-cv-118 and Count VIII in 05-cv-149); and declaratory and injunctive relief (Count XV in 05-cv-118 and Count IX in 05-cv-149).[31]  I treat these claims, therefore, as waived.

As for Count IV of the Second Amended Complaint in 05-cv-118, I agree that Deep has waived opposition to dismissal of his claim under New York's Consumer Protection Act, N.Y. Gen. Bus. Law §§ 349 et seq.  But I conclude that he has not abandoned his claim under New York's Donnelly Antitrust Act, N.Y. Gen. Bus. Law §§ 340 et seq.  (He asserts both claims in Count IV.)  Deep does respond to the defendants' arguments regarding his "antitrust injury" and

---

[31] Deep makes no reference whatsoever in his opposition to "tortious interference," "piercing the corporate veil," "declaratory and injunctive relief," or negligence.  His only references whatsoever to "conspiracy" are found within his discussion of antitrust and RICO claims.

their alleged anticompetitive conduct.  <u>See</u> Opp'n at 21-26.  Although he does not mention the Donnelly Act by name, and cites only federal antitrust case law, it is fair to read his opposition as opposing dismissal of his state antitrust claims as well.

In the Second Amended Complaint in 05-cv-118, I therefore **DISMISS** Count IV insofar as it alleges New York consumer protection claims, Counts X, XII, XIII, XIV, and XV, on the basis of waiver.  In the First Amended Complaint in 05-cv-149, I **DISMISS** the corresponding Counts IV, VI, VII, VIII, and IX.

## H.    *Donnelly Act (State Antitrust) Claim*

This is the second part of Count IV of the Second Amended Complaint (05-cv-118).  It is not asserted in the First Amended Complaint (05cv149).

Deep asserts that the alleged federal antitrust violations violate New York's antitrust law, the Donnelly Act, N.Y. Gen. Bus. Law, §§ 340 <u>et</u> <u>seq</u>., as well.  According to the New York Court of Appeals:

> This court has held that the Donnelly Act, having been modeled after the Federal Sherman Act of 1890, should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justifies such a result.

<u>X.L.O. Concrete Corp. v. Rivergate Corp.</u>, 83 N.Y.2d 513, 518 (N.Y. 1994) (quoting <u>Anheuser-Busch, Inc. v. Abrams</u>, 71 N.Y.2d 327, 335 (N.Y. 1988) (internal quotation marks removed)).  Thus, the burden is on Deep to show that the Donnelly Act permits his claim when federal antitrust law does not.  <u>See</u>, <u>e.g.</u>, <u>People v. Rattenni</u>, 81 N.Y.2d 166, 172 (N.Y. 1993) ("While defendants argue that we should reject [the federal rule], they have presented no

persuasive reason . . . for us to depart from the Supreme Court's interpretation of the Sherman Act"); 4A Robert L. Haig, New York Practice § 79:8 (2d ed.) ("[T]he phrasing of the Court of Appeals in [X.L.O. Concrete Corp.] suggests that the burden is on the party who contends that the federal law should not be followed . . . ."). In his opposition, Deep has not argued that his New York antitrust claims differ from his federal claims. Indeed, his antitrust arguments cite only federal law. Therefore, I construe the Donnelly Act as paralleling its federal counterpart, and dismiss Deep's New York antitrust claims for the same reasons.

## I.       Breach of Contract Claim

This is Count IX of the Second Amended Complaint (05-cv-118), and Count III of the First Amended Complaint (05-cv-149).

Deep claims that he entered into contracts with Trans World and the Record and Movie Companies, and that they breached these contracts with him, thereby causing him damage. Compl. ¶¶ 505-12. Under New York law, an action for breach of contract requires proof of "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir. 2000) (quoting Rexnord Holdings, Inc. v. Biderman, 21 F.3d 522, 525 (2d Cir. 1994)).

### (1)    The Record and Movie Companies

Deep alleges no facts that could rise to the level of contract formation with the Record and Movie Companies, let alone a breach of such a contract. Therefore, I **DISMISS** the breach of contract claim as to the Record and Movie Companies in both complaints.

### (2)   Trans World

Deep asserts that sometime around September 2001, he met with Trans World agents and discussed possible business transactions relating to Aimster. Compl. ¶¶ 78-89.  Deep alleges that at that time he "proposed" possible uses for Aimster, id. ¶ 85, and that Trans World president Robert Higgins "proposed" that Deep license Aimster to another controlled business entity, id. ¶ 86.  In response, Deep "conveyed to [Trans World] *my promise that I would consent* to such a transaction, *provided that* I could share in the control of and profit from my proprietary Aimster method.  As consideration, I promised that I would also share in any loss . . . ."  Id. ¶ 87 (emphasis added).  These allegations show that at this time Deep had only an expectancy of a future contract, for he characterizes both parties' actions or words as proposals.  The most that he says that he promised is that he "would" consent at some time in the future, depending on whether Trans World allowed him to share in the control and profit from the endeavor.  "The mere expectation that a contract will be entered into . . . do[es] not constitute a contract."  Papa v. New York Tele. Co., 72 N.Y.2d 879, 881 (N.Y. 1988) (quoting 1 Williston, Contracts § 27, at 66 (3d ed.) (modification in original).

Deep's complaint also contains allegations relating to a Securities Purchase Agreement.  Compl. ¶¶ 153-63.  Deep asserts that "Trans World and the corporation BuddyUSA Inc. entered into a Securities Purchase Agreement dated January 18, 2001," and that "[Deep's] signature was attached to" it.  Id. ¶¶ 153-54.  On a motion to dismiss, "courts may consider not only the complaint but also matters fairly incorporated within it . . . ."  Greene v. Rhode

Island, 398 F.3d 45, 48 (1st Cir. 2005) (quoting In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003) (quotation marks omitted)).  In a breach of contract claim, this includes the contract document itself.  Diva's Inc. v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005).  Upon review of that document, I conclude that Deep's allegations themselves characterize it fairly: the parties to this Securities Purchase Agreement are indeed BuddyUSA, Inc. and Trans World; Deep's signature is attached on behalf of BuddyUSA. Because Deep is not individually a party to this contract,[32] he may not now sue on it.  If a breach did occur, it is a claim that belongs to BuddyUSA, not Deep personally.

Deep's allegations also refer to another possible contract, a Consulting Agreement.  Compl. ¶¶ 158-60.  Deep states that this document was "attached" to the Securities Purchase Agreement, Compl. ¶ 158, but he does not state that he personally executed or signed it.  This document appears to be "Schedule 5.3" of the same Securities Purchase Agreement.  Pl.'s Decl. in Support of Mot. to Show Cause re Sanctions, Ex. 10 (Docket Item 4).[33]  Of this Schedule, the Securities Purchase Agreement states:  "[W]ithin 90 days [following execution of the Securities Purchase Agreement], the Company and the . . . Purchaser

_____

[32] In his opposition, Deep argues that he was a party to the contract in his individual capacity, and not just as a representative of BuddyUSA.  Opp'n at 7.  To prove this, he "attach[es] and swear[s] to an exhibit of a different signature page showing that [he] did in fact sign as a party personally to the agreement."  Id. (emphasis removed).  This signature page, submitted as Ex. 6 to Deep's Declaration in Support of Motion for Order to Show Cause Re Sanctions (Docket Item 4), contains John Deep's signature as President of BuddyUSA, Inc.  In addition, the operational provisions of the entire Securities Purchase Agreement contract refer consistently to "the Company" and "BuddyUSA, Inc.," not to Deep.  There is no basis to conclude that Deep personally has any rights under the contract.

[33] As I have already discussed, I may properly consider the contract itself in a breach of contract claim, although it is outside the pleadings.  Diva's Inc., 411 F.3d at 38.

. . . shall negotiate in good faith and enter into the Consulting Agreement which shall contain provisions substantively implementing the terms set forth in Schedule 5.3. . . ." Id. ¶ 5.3 at 9. Once again, Deep is not a party; only "the Company" (BuddyUSA) is. Moreover, Deep does not allege that the parties actually did "negotiate in good faith and enter into" this Consulting Agreement. Instead, Schedule 5.3 is merely a document purporting to contain the terms of a future, anticipated, unexecuted, contract. See id. ¶ 8.4 at 11 (acknowledging the Consulting Agreement was as yet unexecuted). Deep's allegations do not plead a contract.

Finally, Deep alleges that his "signature was attached to a second securities purchase agreement in March 2001, involving BuddyUSA Inc. and Bill Duker's wife, Sharon Duker, on behalf of a separate firm Pi2 Products LLC." Compl. ¶ 229. Deep makes no further claims as to the terms of this agreement. Without additional factual allegations from Deep showing that he signed this document as an individual, I conclude that, like the first Securities Purchase Agreement, Deep was not a party to this contract.

Since Deep has not sufficiently alleged anywhere in his complaints a contract between himself and either Trans World or the Record and Movie Companies, his breach of contract claims fail. I **DISMISS** the breach of contracts claims from both complaints.

**J.      *Breach Of Fiduciary Duty***

This is Count VIII of the Second Amended Complaint (05-cv-118) and Count II of the First Amended Complaint (05-cv-149).

In this claim, Deep asserts that the defendants owed him a fiduciary duty, see Compl. ¶ 495 ("Defendants were fiduciaries of plaintiff"), and that they all breached their duties in various ways, id. ¶¶ 498-99, 501-02.  Under New York law, the elements of a breach of fiduciary duty claim are (1) the existence of a fiduciary relationship and (2) breach of a fiduciary duty.  United Republic Ins. Co. v. Chase Manhattan Bank, 168 F. Supp.2d 8, 15 (N.D.N.Y. 2001); Cramer v. Devon Group, Inc., 774 F. Supp. 176, 184 (S.D.N.Y. 1991); Restatement (Second) of Torts § 874 (2005).

### (1)    Record and Movie Companies

Deep alleges that the Record and Movie Companies "have breached their fiduciary duties to plaintiff by concealing and embedding payments to Trans World of promotional funds to which plaintiff is entitled."  Compl. ¶ 500.  Although Deep asserts that these defendants breached a fiduciary duty, nowhere does he identify what facts generate the alleged fiduciary duty.  Because the complaint does not allege facts to establish that these defendants owed Deep a fiduciary duty, I **DISMISS** Count VIII of 05-cv-118 and Count II of 05-cv-149 as to the Record and Movie Company defendants.

### (2)    Trans World

In its motion to dismiss, Trans World argues that Deep has failed to allege the existence of a fiduciary duty, because the relationship between Deep and Trans World can be characterized as, at most, "a mere business relationship."  Trans World Mem. at 18.  In opposition, Deep argues generally that he "reposed confidence and trust in defendants," and that they "accepted and solicited that confidence and trust . . . ."  Opp'n at 41.

The general rule is that an arms-length commercial transaction does not give rise to a fiduciary relationship between the parties; in most cases the terms of the contract establish the relationship.   Northeast Gen. Corp. v. Wellington Adv., 82 N.Y.2d 158, 160 (N.Y. 1993).   However, "a cause of action for breach of fiduciary duty may survive, for pleading purposes, where the complaining party sets forth allegations that, apart from the terms of the contract, the [parties] created a relationship of higher trust than would arise from the [contract] alone."   EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (N.Y. 2005).   For example, allegations that the plaintiff "was induced to and did repose confidence in [the defendant's] knowledge and expertise to advise [him] . . . and engage in honest dealings with [the plaintiff's] best interest in mind" would suffice.   Id.   Deep's opposition appears to invoke this principle; therefore I construe his argument to be that, despite the existence of written documents defining the terms of the relationship, Trans World induced him to repose confidence in its knowledge and expertise, thereby creating a relationship of higher trust.   The problem with Deep's argument is that his complaint does not make specific allegations to support the conclusion that Trans World did induce such trust.

Deep identifies only two agents or officers of Trans World with whom he had dealings: Robert Higgins (the president), Compl. ¶ 80; and Bill Duker (some type of unspecified "agent"), id. ¶¶ 3-4, 75, 80, 144.   Higgins's role, according to the complaint, was limited:  he merely "proposed to purchase an interest in" Deep's technology, said that Duker would represent Trans World in such a transaction, and subsequently "work[ed] together" with Deep.  Id. ¶¶ 80,

90.  These are not allegations that Higgins induced Deep to repose trust and confidence in Trans World.

Duker's role appears to be larger, as he allegedly negotiated extensively with Deep on Trans World's behalf.  Id. ¶¶ 3-4, 75, 80-89.  But there are no allegations that during this time Duker induced Deep to trust or repose a special confidence in him or Trans World.  Instead, all his alleged representations to Deep during the negotiation concerned Trans World's position and goals.  Id. ¶ 83 ("Duker described his role as an agent for Robert Higgins who set up legal entities and transactions . . . analyzing Trans World's special needs, and received a commission as a percentage of the profit of the entities."); ¶ 86 ("Duker represented . . . that Robert Higgins authorized him to set up a special purpose entity . . . to which Robert Higgins proposed that I license my [technology].").  These representations are licensing proposals, not inducements to rely upon Duker's or Trans World's advice and expertise.  As for the period following the negotiating, the only other representations that Duker allegedly made on Trans World's behalf are not inducements, but instances in which Duker explicitly took a position contrary to Deep's interests.  See, e.g., id. ¶ 187 (Duker tells Deep that Trans World would not pay for Deep's trademark lawyer, although Deep believed that Trans World was obligated to do so).

Deep does allege that Duker gave him one piece of advice: Duker "advised me [to] engage Boies-Schiller as my lawyers."  Id. ¶ 88.  Contrary to inducing trust in Trans World, however, this statement is at best a warning that Deep should retain lawyers to look over the advisability and propriety of

the business transaction.  That is the opposite of inducement.  Furthermore, if that statement could be said to induce Deep to repose trust or confidence in *any* party, it would have to be the Lawyers, not Trans World.[34]

Finally, although Deep has asserted that he was involved in "an unincorporated joint venture with Trans World . . .," Compl. ¶ 31, he has not set forth adequate factual allegations that Higgins or Duker, while acting as agents for Trans World, created a joint venture with him or induced him to repose trust or confidence in Trans World.

Under New York law, "joint venturers owe each other a fiduciary duty." In re Kressner, 164 B.R. 235, 238 (Bankr. S.D.N.Y. 1994).  New York also recognizes that a joint venture can be "based upon the *implied* agreement evidenced by the parties' conduct."   Richbell Info. Servs., Inc. v. Jupiter Partners, L.P., 309 A.D.2d 288, 297 (N.Y. App. Div. 2003):

> The indicia of the existence of a joint venture are: acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses.

Id. at 298.  As I have set forth in my analysis of Deep's contract claims, infra Section I, he may have had expectancies, but he has not alleged sufficient facts to set forth an agreement.  Therefore, he was not a member of a joint venture

---

[34] Deep also alleges that the Lawyers subsequently held Duker out as a reputable attorney somehow affiliated with them, and that Duker gave Deep legal advice.  Id. ¶¶ 262-80.  There are serious contradictions inherent in Deep's assertion that he believed Duker to be an agent of his negotiating adversary, yet simultaneously also believed him to be a trustworthy adviser.  But even if the Lawyers and Duker induced Deep to trust Duker in his capacity as a lawyer somehow affiliated with Deep's lawyers, *not in his capacity as an agent of Trans World*, this would not cause Deep to repose trust and confidence in Trans World.

by virtue of an express agreement.  For the implied joint venture in particular, he has not alleged any agreement, even implied, on "a provision for the sharing of profits and losses."  The closest Deep comes is in his assertion:

> Over the next several months, Trans World, Robert Higgins and I did in fact work together, in a series of meetings at the Trans World offices and during a trip to Chicago to consult with the firm Diamond Cluster, by sharing control and expenses in our common interest according to the terms that I had promised Robert Higgins I would consent to, through my meeting with Bill Duker.

Compl. ¶ 90.  Those "terms," to which I referred in the contract analysis, are equally vague.  In response to a license proposal, Deep alleges:

> I conveyed to Robert Higgins through Bill Duker my promise that I would consent to such a transaction, provided that I could share in the control of and profit from my proprietary Aimster method.  As consideration, I promised that I would also share in any loss arising from the development of my proprietary Aimster method.

Compl. ¶ 87.  These are all assurances of *willingness* to agree, not of agreement, even implicit, on how profits and losses will be shared.  As a result, I cannot conclude that the parties entered into a joint venture and thereby created a "higher" advisory relationship.

I therefore **DISMISS** Count VIII of 05-cv-118 and Count II of 05-cv-149  as to Trans World.

**K.    *Aiding And Abetting Breach Of Fiduciary Duty***

This is Count XI of the Second Amended Complaint (05-cv-118) and Count V of the First Amended Complaint (05-cv-149).

In this Count, Deep alleges that the defendants "have knowingly induced or participated in the breach of fiduciary duties" and that, as a result, he "has been deprived of his business and reputation and suffered damages as alleged

herein."  Compl.  ¶¶ 520-21.  Deep maintains that the Record and Movie Companies aided Trans World's breach (in an undisclosed manner) and that Trans World aided the Lawyers' breach (he states that Duker introduced him to his lawyers "in order to carry out their schemes").  Opp'n at 44.  I have already concluded that Trans World had no fiduciary obligation.  As a result, the Record and Movie Companies could not have aided and abetted a breach by Trans World.  The only other claim is that Trans World aided and abetted the Lawyers' breach.  Since I am abstaining from deciding the fiduciary breach claim against the Lawyers, and since this aid and abet claim against Trans World depends on whether the Lawyers have breached their fiduciary duty, I conclude that I should abstain from this aid and abet claim against Trans World as well.

**L.      *Constructive Trust Claim/Unjust Enrichment***

This is Count XVI of the Second Amended Complaint (05-cv-118), and Count X of the First Amended Complaint (05-cv-149).  Deep's claim here is based entirely upon a constructive trust; he does not seek relief in restitution aside from imposition of a constructive trust.

In New York, the elements that must be established for a constructive trust claim are: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment."  Sharp v. Kosmalski, 40 N.Y.2d 119, 121 (N.Y. 1976); Church of God Pentecostal Fountain of Love, MI v. Iglesia de Dios Pentecostal, MI, 812 N.Y.S.2d 131, 133 (N.Y. App. Div. 2006).

Because I have already concluded that Deep's complaint does not allege the existence of a fiduciary relationship with the Record and Movie Companies or Trans World, I **DISMISS** this claim.

## V. ABSTENTION

Deep's federal claims conferred federal jurisdiction upon this court under 28 U.S.C. §1331. Deep also asserted federal jurisdiction under 28 U.S.C. § 1334, a bankruptcy provision. See Compl. ¶ 66.[35]

"The federal courts' jurisdiction over bankruptcy cases is governed by 28 U.S.C. § 1334 . . . ." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 66 (1st Cir. 2002). Subsection (a) confers original and exclusive jurisdiction over "cases under title 11." This jurisdiction includes only "the bankruptcy petition itself," for it "is the umbrella under which all of the proceedings that follow . . . take place." Id. (quoting 1 Collier on Bankruptcy, supra, ¶ 3.01[3], L. King, et al. eds., 15th rev. ed. 2001). By contrast, subsection (b) confers original (but not exclusive) jurisdiction over cases "arising under title 11, or arising in or related to cases under title 11." Deep's complaints are not bankruptcy petitions and thus not covered by subsection (a). Instead, jurisdiction is under subsection (b).

A district court may abstain from hearing any case "arising under," "arising in" or "related to" cases under title 11, "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Factors that are important are "the extent to which state law

---

[35] Diversity jurisdiction, 28 U.S.C § 1332, is lacking, for Deep is a citizen of New York, Compl. ¶ 31, and at least the Lawyers are also citizens of New York, see id. ¶¶ 61-63.

issues predominate over bankruptcy issues, the presence of a related proceeding commenced in state court, [ ] the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the litigants" the interests of judicial economy, and the existence of unsettled issues of state law.  In re Colarusso, 382 F.3d 51, 57 (1st Cir. 2004).

The Lawyers argue that all these factors counsel discretionary abstention with respect to the claims Deep asserts against them.[36]  They point out that Deep has brought a legal malpractice case against them in New York Supreme Court, Albany County, Deep v. Boies, No. 6453-05 (N.Y. Sup. Ct. 2005).  Lawyers Mem. at 13.  Deep's only response to this argument is contained in a footnote on the last page of his opposition; he states that he filed the New York case "to protect [his] rights," and that if the District of Maine exercises jurisdiction over his claims, he "will move to stay [his] state court action [asserting malpractice claims against the attorneys] in order to conserve judicial resources."  Opp'n at 50 n.12.

I conclude that I should abstain.  The pending New York state court complaint asserts the essential factual allegations concerning the Lawyers, and Deep is represented by a lawyer in that lawsuit.[37]  This factor, therefore, counsels abstention.  Other factors weigh heavily for abstention as well.  The First Circuit's few forays into this area have focused on whether state or federal

---

[36] The Lawyers also argue that I *must* abstain under 28 U.S.C. § 1334(c)(2), and that I *should* decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3).  Lawyers Mem. at 11-15.  Because I decide to abstain as a matter of discretion under § 1334(c)(1), I do not reach these issues.

[37] The state complaint against the Lawyers focuses on malpractice, negligence, conflicts of interest, and misappropriation of the Aimster asset, and names an additional defendant, William Duker.

law predominates.  See id. (affirming refusal to abstain, where state law cannot be said to predominate); In re Middlesex, 292 F.3d at 69 (affirming abstention, even when issue of federal law existed).  Here, state law incontestably predominates; there is no issue of federal law remaining.  The First Circuit also has pointed to the factors of judicial comity and economy, as well as avoidance of forum shopping.  See In re Colarusso, 382 F.3d at 57 (holding state court litigation no danger to judicial economy); In re Middlesex, 292 F.3d at 69 (holding that economy and comity counseled discretionary abstention, and that danger of forum shopping existed).  Here, comity favors abstention, given the pending New York case.  Judicial economy cuts in neither direction; as far as I can tell, the state court case, like this case, still is in the pleading stage.  See Lawyers Mem. at 13 (stating in December, 2005, that the state court "case is in the pleading stage [and] [a]nswers are due . . . in mid-December").  Avoidance of forum shopping heavily favors abstention.  Deep has brought at least four court proceedings against the Lawyers alleging similar facts, a matter of which I may take judicial notice.[38]   See In re Middlesex, 292 F.3d at 69 (affirming abstention where district court "sagely commented on 'avoidance of forum shopping' as a reason" to abstain).  Similarly, "the interest of justice" would be better served by resolving this dispute among New York parties in New York, not hundreds of miles away in a Maine federal court.  Weighing all these factors, I conclude that abstention is the preferred resolution.   I therefore

---

[38] Two of the cases are in this court and the subject of this very Order.  The third case is in the Northern District of New York: Deep v. Boies, No. 05-cv-1187 (N.D.N.Y. 2005).  The fourth case is in New York Supreme Court, Albany County: Deep v. Boies, No. 6453-05 (N.Y. Sup. Ct. 2005).

exercise the discretion vested by 28 U.S.C. § 1334(c)(1) and abstain from deciding the state law claims asserted against the Lawyers. I also abstain from deciding the aid and abet claim against Trans World because it is inextricably tied to the fiduciary breach claim against the Lawyers. Therefore, I **DISMISS WITHOUT PREJUDICE** those claims.

## VI.   OTHER MOTIONS

### 1.   *Plaintiff's Motion for Leave to File Supplemental Affidavit (Docket Item 65)*

After briefing on the motion to dismiss was completed, Deep submitted a Motion for Leave to File Supplemental Affidavit ("Supplemental Aff. Mot."). He argued that the defendants in their reply had "asserted for the first time 'facts' or exhibits . . . in an attempt to contradict [the] Complaint," and that his affidavit was necessary "[i]n order to be heard in opposition to such 'facts' and misleading statements . . . ." Supplemental Aff. Mot. at 1. The defendants all opposed the motion and Deep replied.

I have reviewed Deep's proposed affidavit and I agree with the defendants' argument that it is most accurately characterized as a sur-reply. It is organized around five points made by the defendants in their replies that Deep wishes to dispute. Id. at 1, 2, 4, 8. Each "allegation" attempts to refute an argument, and either points to where in the complaint Deep pleads a claim or a fact, or realleges the same facts already alleged in his complaint. See, e.g., id. ¶ 4 ("My Complaint for Fraudulent Transfer also repeats and realleges those same allegations. Compl. ¶ 426"); ¶ 14 ("My Complaint specifically describes the 'kickbacks' paid to Trans World . . . at ¶¶ 8-11, 21-23, 91-141, 183-184,

196."); ¶ 19(a) ("In September 2000, in a meeting at the corporate headquarters of Trans World in Albany, New York, . . . I provided to Trans World my presentation of the general features of my proprietary Aimster method . . . ."). The lone exception is where Deep makes reference to two attachments, copies of news articles discussing a recent DOJ investigation of the Lawyers.  Id. ¶ 6.

I therefore construe his motion as one for leave to file a sur-reply, and **GRANT** that motion.  I disregard any additional facts (the alleged DOJ investigation of the Lawyers) raised by the filing.  On a Fed. R. Civ. P. 12(b)(6) motion I may not consider anything outside the complaint's allegations, those documents fairly incorporated within it, and facts of which I may take judicial notice.  Greene, 398 F.3d at 48-49.

### 2. *Plaintiff's Notices of Recent Decision (Docket Items 71, 81, 86)*

Deep has brought other court proceedings or decisions to the court's attention.  I hereby take notice of them.  No further action is necessary.[39]

### 3. *Plaintiff's Emergency Motion to Enforce the Automatic Stay and Enjoin Threatened Sale of Debtor's Property (Docket Item 80)*

Deep has recently filed another motion in this court, seeking to have me enforce the automatic stay entered under 11 U.S.C. §362 in his Northern District of New York Chapter 13 bankruptcy case.  See In re Deep, No. 05-10040 (Bankr. N.D.N.Y. Jan 4, 2005).  (This is a different bankruptcy case than

---

[39] The Lawyers objected to Deep's Notice of the recent decision In re Napster, Inc. Copyright Litigation, 235 F.R.D. 463 (N.D. Cal. 2006), arguing that the case was not relevant; Deep responded.  See Pl.'s Notice of Recent Decision (Docket Item 71); Lawyers Objection to Pl.'s Notice of Recent Decision (Docket Item 72); Pl.'s Response to Lawyers Objection (Docket Item 73).  I hereby overrule the objection.  While I agree that recent cases brought to the attention of the court should be relevant to the issue at hand, it is not necessary to strike or disregard Deep's notice.

the one that the MDL Panel transferred to this court.)  He argues that he has a legal or equitable property interest in Amici, LLC, and that based on the authority of 11 U.S.C. § 362 I should enjoin the Lawyers from selling, transferring, or encumbering that interest because it is property of the bankruptcy estate.  Pl.'s Emergency Mot. to Enforce Automatic Stay & Enjoin Threatened Sale of Debtor's Property ("Emergency Mot.") ¶¶ 5-6 (Docket Item 80).

Deep has already brought this motion in the underlying bankruptcy proceeding itself, and Judge Littlefield of the Northern District of New York Bankruptcy Court denied it.  See In re Deep, Adv. Proc. No. 06-90169 (Bankr. N.D.N.Y. Jul. 25, 2006) (order denying motion to enforce automatic stay). From the transcript of the hearing that Deep has attached, it appears that the pendency of the motions to dismiss in this Court may have affected Judge Littlefield's decision.  See Emergency Mot., Ex. 2 at 13.[40]  Therefore, because Judge Littlefield's denial suggests that he was awaiting my decision on these motions to dismiss, and I have now decided them, thereby ending this court's involvement with Deep's claims, I **DENY** Deep's motion to enforce the automatic stay, **WITHOUT PREJUDICE** to whatever Judge Littlefield decides to do.

---

[40] Judge Littlefield did not state that the denial was with prejudice, and some of his words suggest that he believed that the motion to enforce the automatic stay might have some merit under different circumstances.  See id. ("I can understand Mr. Deep's concern that in effect property of the chapter 13 estate is being transferred without court authority.  That's another issue for a different day or different complaint heading or a different pleading, not the pleading that's before me.")

### 4.     *The Lawyers Motion for Sanctions (Docket Item 84)*

The Lawyers have recently requested sanctions under Rule 11(c).[41]  They ask for a money award against Deep for having "filed seven (7) separate actions in four different courts alleging essentially the same allegations, which allegations are without merit in both fact and law."  Lawyers Mot. for Sanctions at 2.  They also request that Deep be enjoined from beginning any new lawsuits against them, adding them as defendants in any pending lawsuits, or making any motions in this or any other lawsuit without the prior permission of this court.   Finally, they request that Deep be enjoined from filing any paper authored in whole or in part by a lawyer who does not sign the paper or comply with this court's rules for admission to practice.   The motion is **GRANTED IN PART** and **DENIED IN PART**.

Since I am abstaining, at the Lawyers' request, from considering the state law allegations of Deep's complaints against them, I am not in a position to determine that  his "allegations are without merit in both fact and law."  Making a money award on the basis that his allegations lack merit would be inconsistent with my decision to abstain in favor of the New York state court.

I am acutely aware of Deep's repetitive filings, of their prolixity, of the difficulty in measuring his wide-ranging allegations against known rules of law, and of the appearance that someone with legal knowledge has assisted Deep at some level (not at a high enough level).  It is appropriate, therefore, to put Deep on notice that filing restrictions "may be in the offing" in this District.  See Cok

---

[41] Since neither side refers to the safe harbor provisions of Rule 11(c), I assume that they have been satisfied or waived.

v. Family Court of R.I., 985 F.2d 32, 35 (1st Cir. 1993).  This represents the "cautionary order" of which Cok speaks.  Groundless and inappropriate filings will not be tolerated.

Until now, I have given Deep the benefit of treatment as a *pro se* litigant in interpreting his filings.  I put him on notice that if in the future he files a paper that appears to have been drafted in part by a lawyer, I may require him to come to this Court to be examined under oath how it was prepared:

> What we fear is that in some cases actual members of the bar represent petitioners, informally or otherwise, and prepare briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar, typified by Fed. R. Civ. P. 11, but which exists in all cases, criminal as well as civil, of representing to the court that there is good ground to support the assertions made.  We cannot approve of such a practice.  If a brief is prepared in any substantial part by a member of the bar, it must be signed by him.  We reserve the right, where a brief gives occasion to believe that the petitioner has had legal assistance, to require such signature, if such, indeed, is the fact.

Ellis v. Maine, 448 F.2d 1325, 1328 (1st Cir. 1971).

Finally, the Lawyers have filed, through their local attorney of record, a letter dated September 22, 2006, offering information about "recent events that could have a bearing on the Attorney Defendants' Motion for Sanctions under Rule 11."  Lawyers Notice/Correspondence (Docket Item 89).  It refers to a motion that Deep has filed in U.S. Bankruptcy Court for the Northern District of New York, seeking a second reconsideration of that court's order dismissing Deep's action against Amici LLC.   The letter states that Deep's motion for reconsideration "refers repeatedly to proceedings in the District of Maine before this Court, and activities of this Court."  Id.  It concludes: "If requested, we will

provide the Court with copies of the September 18, 2006 motion or any other of the above-referenced . . . pleadings and orders." Id. Without knowing the significance of "events" or what Deep has said in his motion, I have no reason to request copies of the motion or other items. Instead, I expect this Order to end this court's involvement with this case.

## VII. CONCLUSION

As to all defendants, I **DISMISS WITH PREJUDICE** Counts I-III, V-VII in 05-cv-118.

As to the Lawyers, I **DISMISS WITHOUT PREJUDICE** all remaining counts of 05-cv-118 and all of 05-cv-149.

As to all the other defendants, I **DISMISS WITH PREJUDICE** all remaining counts of 05-cv-118 and all of 05-cv-149, except that for Trans World only, the dismissal of Count XI in 05-cv-118, and Count V in 05-cv-149 is without prejudice.[42]

**SO ORDERED**.

**DATED THIS 2ND DAY OF OCTOBER, 2006**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[42] I do not permit Deep to amend his complaints further under Fed. R. Civ. P. 15. He has already amended both complaints once in this court, and he also amended the 05-cv-118 complaint once before its MDL transfer here. See Am. Compl., Deep v. Recording Indus. Ass'n of America, Inc., No. 05-cv-205 (N.D.N.Y. Feb. 16, 2005). Additionally, as I have already noted, Deep has an extensive litigation history. Except for the issues I have left for state court, it is time for these matters to come to an end.